NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.   A-1767-13T2
             A-1768-13T2
             A-1769-13T2
             A-1770-13T2
             A-2531-13T2
             A-2533-13T2
             A-2536-13T2

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

IDRIS R. PERRY,

     Defendant-Respondent.

_____

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

CARMEN NAY,

     Defendant-Respondent.

_____

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

RAYMOND EVANS,

     Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 3, 2015**
>
> **APPELLATE DIVISION**

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

CHERYL PAPP,

     Defendant-Respondent.

_____

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

TAMMY M. MCINTYRE,

     Defendant-Respondent.

_____

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BRADLEY BREWER,

     Defendant-Appellant.

_____

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RICHARD J. WISSER,

     Defendant-Appellant.

_____

Argued (A-1767-13, A-1768-13, A-1769-13, A-1770-13, A-2533-13) and Submitted (A-2531-13, A-2536-13) October 29, 2014 - Decided March 3, 2015

Before Judges Alvarez, Waugh, and Maven.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 13-01-0163 (A-1767-13); 13-05-0689 (A-1768-13); 13-03-0370 (A-1769-13); 13-06-0788 (A-1770-13).

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 13-02-0624 (A-2531-13).

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 13-08-0889 (A-2533-13).

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 13-03-0600 (A-2536-13).

Brian D. Gillet, Assistant Prosecutor, argued the cause for appellant State of New Jersey in A-1767-13, A-1768-13, A-1769-13, A-1770-13 (Andrew C. Carey, Middlesex County Prosecutor, attorney; Mr. Gillet, of counsel and on the briefs).

Anthony Aldorasi, Assistant Deputy Public Defender, argued the cause for appellant Brewer in A-2533-13 (Joseph A. Krakora, Public Defender, attorney; Mr. Aldorasi, of counsel and on the brief).

James P. McClain, Atlantic County Prosecutor, attorney for appellant State of New Jersey in A-2531-13 (Deborah A. Hay, Assistant Prosecutor, of counsel and on the brief).

Stephen J. Buividas, attorney for appellant Wisser in A-2536-13.

Michele E. Friedman, Assistant Deputy Public Defender, argued the cause for respondents Perry (A-1767-13), Nay (A-1768-13), Evans (A-1769-13), and Papp (A-1770-13) (Joseph E. Krakora, Public

3

Defender, attorney; Ms. Friedman, of counsel and on the brief).

Alexis R. Agre, Assistant Prosecutor, argued the cause for respondent State of New Jersey in A-2533-13 (Robert D. Bernardi, Burlington County Prosecutor, attorney; Ms. Agre, of counsel and on the brief).

Stefankiewicz & Barnes, attorneys for respondent McIntyre in A-2531-13 (David A. Stefankiewicz, of counsel and on the brief).

Joseph D. Coronato, Ocean County Prosecutor, attorney for respondent State of New Jersey in A-2536-13 (Samuel Marzarella, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

ALVAREZ, P.J.A.D.

N.J.S.A. 2C:40-26(a) and (b) make driving while suspended a fourth-degree criminal offense punishable by a mandatory minimum jail term of 180 days under certain circumstances stemming from driving while intoxicated (DWI), N.J.S.A. 39:4-50, or refusal to submit to chemical testing (refusal), N.J.S.A. 39:4-50.4(a). In these seven appeals, consolidated for decision, we address whether charges can be brought under the statute when the act of driving occurs beyond the determinate sentenced term of suspension, but before reinstatement, while the driver continues on administrative suspension. We conclude that the statute criminalizes the operation of a motor vehicle only while the

operator is serving the court-imposed term of suspension, and not thereafter.

I

We briefly summarize the procedural history and factual circumstances surrounding each defendant's charges. In each case, either the State or defendant was granted leave to appeal or filed a timely appeal as of right.

A.

Perry

On May 12, 2011, Idris Perry pled guilty to DWI and refusal, and his driving privileges were suspended for a 300-day period, ending March 7, 2012. Perry was issued a summons for driving while suspended, N.J.S.A. 39:3-40, on the day before his DWI and refusal suspension term would have expired. On May 30, 2012, he was again charged with operating a motor vehicle during a period of suspension, resulting in the indictment on appeal under N.J.S.A. 2C:40-26(a).

Judge Douglas K. Wolfson granted Perry's motion to dismiss his indictment. The State thereafter moved for reconsideration. In a written opinion dated October 21, 2013, consolidating his decisions in the Perry, Carmen Nay, Raymond Evans, and Cheryl Papp cases, Judge Wolfson denied the State's motion.

On February 19, 2008, Nay pled guilty to DWI, resulting in the suspension of her driving privileges for a seven-month[1] period. Nay was convicted of driving while suspended on April 30, June 12, and September 22, 2010. Nay did not restore her driver's license after the suspension periods expired. On March 15, 2013, Nay was charged with driving with a suspended license in North Brunswick. She was indicted for operating a motor vehicle during a period of license suspension, N.J.S.A. 2C:40-26(a).

Nay's motion to dismiss the indictment was granted by Judge Wolfson after oral argument on September 23, 2013. Her matter was included in Judge Wolfson's consolidated written opinion in the four Middlesex County cases.

## Evans

On July 13, 2011, Evans pled guilty to DWI and refusal. The record does not disclose how long the court suspended Evans's license. Since this was his first DWI, however, his driving privileges could not have been suspended for more than one year. On September 1, 2011, Evans was charged with driving while suspended, and he pled guilty to that offense on November

---

[1] The trial judge's opinion from October 21, 2013, mistakenly states that the suspension was for three months.

17, 2011. Evans certified that he did not restore his license after the suspension period expired due to financial hardships, which prevented him from paying the restoration fee. On January 6, 2013, he was charged with driving while suspended in East Brunswick. He was indicted on March 7, 2013, for driving while suspended, N.J.S.A. 2C:40-26(a).

Evans's motion to dismiss the indictment was granted after oral argument on September 23, 2013. Judge Wolfson included the decision in his consolidated opinion.

### Papp

On August 11, 2005, Papp pled guilty to DWI, resulting in a seven-month suspension of her driving privileges. She was convicted of driving while suspended on September 14, 2005, and again on September 9, 2008. Papp certified that, due to financial hardship, she was unable to pay the restoration fees after the suspension periods expired. On April 10, 2013, she was charged with driving while suspended in the Township of Woodbridge. On June 6, Papp was indicted for operating a motor vehicle during a period of suspension under N.J.S.A. 2C:40-26(a).

Papp's motion to dismiss the indictment was granted on August 23, 2013. Judge Wolfson denied the State's motion for reconsideration in his consolidated opinion.

## McIntyre

Tammy McIntyre pled guilty to a second DWI on May 31, 2008, and received a two-year license suspension. Assuming McIntyre's suspensions ran consecutively, her final, two-year DWI suspension period ended on April 10, 2010. For reasons unrelated to the DWI convictions, she was ineligible to restore her license on October 10, 2012, when, for the fifth time since her DWI offenses, she was charged with driving while suspended. On February 26, 2013, an Atlantic County grand jury indicted her under N.J.S.A. 2C:20-26(b).

On December 19, 2013, Judge Kyran Connor dismissed McIntyre's indictment.

## Brewer

On December 10, 2009, Bradley Brewer was convicted of a second DWI and received a two-year license suspension ending on December 10, 2011. Brewer failed to pay the administrative fee to restore his license. On March 3, 2013, he was issued a summons for driving while suspended in Mansfield Township. On August 20, 2013, a Burlington County grand jury indicted Brewer for driving during a period of license suspension, N.J.S.A. 2C:40-26(b).

On December 16, 2013, the trial court denied Brewer's motion to dismiss his indictment.

A-1767-13T2

Richard Wisser pled guilty to DWI on January 9, 1998. As this was Wisser's fourth DWI offense,[2] a ten-year license suspension was imposed. During the suspension, Wisser was convicted three times for driving while suspended, and additional periods of suspension were imposed.

On September 13, 2012, Wisser was arrested for DWI, driving while suspended, and other unrelated charges. On March 14, 2013, an Ocean County grand jury indicted him under N.J.S.A. 2C:40-26(b).

On September 9, the trial court denied Wisser's motion to dismiss his indictment, and on December 10, 2013, denied his motion for reconsideration.

## B.

To summarize, in these appeals, two trial judges rendered decisions contrary to the State's position and granted applications to dismiss the indictments, while two ruled against the defendants and allowed the indictments to stand. We review de novo a trial court's construction of a statute. State v. Revie, 220 N.J. 126, 132 (2014). The specific points of error

---

[2] Wisser had previously been convicted of DWI on January 22, 1981, March 1, 1988, and May 2, 1989.

raised by each appellant need not be repeated; they are addressed by the following discussion.

## II

The genesis of N.J.S.A. 2C:40-26 has been discussed in detail elsewhere. See State v. Carrigan, 428 N.J. Super. 609, 613-14 (App. Div. 2012), certif. denied, 213 N.J. 539 (2013). The statute was designed to "create[] criminal penalties for persons whose driver's licenses are suspended for drunk driving offenses and who, while under suspension for these offenses, unlawfully operate a vehicle." Assembly Law and Public Safety Committee, Statement to A. 4303 (Dec. 3, 2009). The significantly enhanced consequences to driving while suspended were the legislative response to "reports of fatal or serious accidents that had been caused by recidivist offenders with multiple prior DWI violations." Carrigan, supra, 428 N.J. Super. at 614. As Carrigan points out, the bill was endorsed by the former Director of the Governor's Council on Alcoholism and Drug Awareness, who also recommended the creation of special-purpose prison facilities for DWI driving recidivists. Ibid. No such facilities have been created.

## A.

It is well-established that the best indicator of legislative intent is "the plain language chosen by the

Legislature." State v. Gandhi, 201 N.J. 161, 176 (2010). In interpreting a statute, we give the relevant language its ordinary meaning and construe it "in a common-sense manner." State in Interest of K.O., 217 N.J. 83, 91 (2014); see also N.J.S.A. 1:1-1 (stating that the words of a statute are customarily construed according to their generally accepted meaning). We do not add terms which may have been intentionally omitted by the Legislature, speculate, or otherwise engage in an interpretation which would avoid its plain meaning. DiProspero v. Penn, 183 N.J. 477, 492 (2005). Where plain language "leads to a clear and unambiguous result, then the interpretive process should end, without resort to extrinsic sources." State v. D.A., 191 N.J. 158, 164 (2007).

The State contends that N.J.S.A. 2C:40-26 must be interpreted to mean that an individual can be charged until he or she pays the requisite license restoration fees, complies with all administrative requirements, and is reinstated by the Motor Vehicle Commission. In support, it cites both to the statutory language and to State v. Zalta, 217 N.J. Super. 209 (App. Div. 1987). Defendants distinguish Zalta, responding that to extend the meaning of "the period of license suspension" as the State proposes violates the language of N.J.S.A. 2C:40-26 and renders the statute both unworkable and unconstitutional.

The statute reads:

> a. It shall be a crime of the fourth degree to operate a motor vehicle during the period of license suspension in violation of R.S. 39:3-40, if the actor's license was suspended or revoked for a first violation of R.S. 39:4-50 or section 2 of P.L. 1981, c. 512 (C. 39:4-50.4a) and the actor had previously been convicted of violating R.S. 39:3-40 while under suspension for that first offense. A person convicted of an offense under this subsection shall be sentenced by the court to a term of imprisonment.

> b. It shall be a crime of the fourth degree to operate a motor vehicle during the period of license suspension in violation of R.S. 39:3-40, if the actor's license was suspended or revoked for a second or subsequent violation of R.S. 39:4-50 or section 2 of P.L. 1981, c. 512 (C. 39:4-50.4a). A person convicted of an offense under this subsection shall be sentenced by the court to a term of imprisonment.

> [N.J.S.A. 2C:40-26(a) and (b).]

Zalta is inapposite because it answered a very different question, namely, whether the Director of the former Division of Motor Vehicles had the inherent authority "to keep a license in suspension beyond the determinate period of suspension imposed by the municipal court" in the context of N.J.S.A. 39:3-40. Zalta, supra, 217 N.J. Super. at 213. That defendant had been found guilty of driving before restoring his privileges after the expiration of a Director-imposed six-month term of

suspension. <u>Id.</u> at 212. He contended that his conviction for driving while suspended should be vacated as he was guilty only of driving while unlicensed. <u>Ibid.</u> In rejecting the argument, we reasoned that the Director's authority included the power to keep a license in suspension until a driver took the requisite administrative steps to have it restored. <u>Ibid.</u> We noted that the suspension of driving privileges was "not necessarily punitive in purpose." <u>Ibid.</u>

The discussion in <u>Zalta</u> also concerned whether "a person of ordinary intelligence acting in good faith" would interpret the phrase, "during the period of [] suspension," as found in <u>N.J.S.A.</u> 39:3-40, to mean he or she would know his license was not restored until the Director reinstated it. This is entirely different than the question considered here, in the context of a criminal statute specifying the circumstances under which, if convicted, a defendant would serve mandatory minimum jail time.

In <u>N.J.S.A.</u> 2C:40-26, the Legislature narrowed the field of persons against whom charges could be lodged to target the group against which it wished to act. In subsection (a), the offense occurs if, and only if, the driver has been convicted of DWI or refusal, <u>and</u> has "previously been convicted of [driving while suspended] while under suspension for that first offense." It follows that the second or subsequent offense must also occur

13 <span>A-1767-13T2</span>

while the driver is "under suspension for that first offense[,]" _i.e._, either a DWI or a refusal. It would be illogical to conclude that the first driving while suspended offense must occur during the sentenced term of suspension, but not the second or subsequent driving while suspended offense that subjects the motorist to prosecution.

Subsection (b) provides that a driver commits the crime if he drives "during the period of license suspension" while his "license was suspended or revoked for a second or subsequent [DWI or refusal] violation." The Legislature made this section applicable solely to drivers with a license suspension for a second or subsequent DWI or refusal violation.

The statute is silent as to those driving without reinstatement beyond the court-imposed term of suspension. Had the Legislature intended to include those persons, the necessary language could have been easily included in both sections of the law. It was not. Such language would, obviously, have cast the far wider net the State proposes. The omission is significant, and for us to interpret the statute as the State suggests would be to add terms that may well have been intentionally excluded.

Additionally, common sense requires this interpretation because of the universe of possible combinations giving rise to prosecutions beyond the scope of the plain language. The

State's reading of the statute would include under (a), for example, persons previously convicted of DWI and driving while suspended during the determinate sentenced term, who twenty years later, drive after restoration but while suspended for reasons unrelated to any DWI or refusal.  Under (b), a person could be convicted if found guilty of DWI twice and, years later, after reinstatement on the DWIs, is caught driving while suspended for an unrelated reason.

By giving the statute this more literal reading, we are guided by its plain language, to which we accord a common sense construction, without adding terms not originally included.  See K.O., supra, 217 N.J. at 91.  The interpretative process should end here.  See D.A., supra, 191 N.J. at 164.

B.

Assuming for the sake of argument, however, that an ambiguity exists in the statute, we reach the same result. Where "two interpretations of the language are plausible, a reviewing court must interpret the statute to effectuate the legislative intent, utilizing extrinsic evidence when it is helpful."  Lozano v. Frank DeLuca Constr., 178 N.J. 513, 522 (2004).  Courts may also resort to extrinsic evidence "if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language."

DiProspero, supra, 183 N.J. at 493. Extrinsic evidence can include legislative history, committee reports, contemporaneous construction, and the policy considerations behind the legislation. Johnson v. Scaccetti, 192 N.J. 256, 276 (2007); Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004). "[W]here a statute or ordinance does not expressly address a specific situation, the court will interpret it 'consonant with the probable intent of the draftsman "had he anticipated the matter at hand."'" Twp. of Pennsauken v. Schad, 160 N.J. 156, 170 (1999) (quoting AMN, Inc. v. Twp. of S. Brunswick Rent Leveling Bd., 93 N.J. 518, 525 (1983) (citation omitted)).

Here, the legislative history is enlightening. The sponsor's statement to the Assembly bill says: "This bill creates criminal penalties for persons whose driver's licenses are suspended for certain drunk driving offenses and who, while under suspension for those offenses, unlawfully operate a motor vehicle." Sponsor's Statement to A. 4303, at 2 (Nov. 30, 2009) (emphasis added). The Statement adds that the provisions of subsection (a) make it a crime to operate a motor vehicle after being convicted of driving while intoxicated or refusing to submit to a breath test "while under suspension for that first offense." Ibid. (emphasis added).

The language is repeated for subsection (b), making it a crime to operate a motor vehicle after two DWI convictions "while under suspension <u>for</u> that second offense." <u>Ibid.</u> (emphasis added). Identical language was used in the <u>Assembly Law and Public Safety Committee, Statement to A. 4303</u> (Dec. 3, 2009), as well as the <u>Sponsor's Statement to S. 2939</u> (June 15, 2009), and the <u>Senate Law and Public Safety and Veterans' Affairs Committee, Statement to S. 2939</u> (Nov. 23, 2009).

The phrasing in the Sponsor's Statement thus supports the notion that the law was intended to apply only when the actor is "under suspension <u>for</u> those offenses," in other words, while serving the court-imposed term of suspension. The explanatory statement is silent about drivers under continuing administrative suspension who did not restore their privileges after being convicted of DWI offenses and completing their determinate suspension terms. Thus, reference to the legislative history supports our conclusion.

C.

Again, for the sake of argument, if after resort to extrinsic evidence ambiguity remains in a criminal statute, then the court must be guided by the "rule of lenity," which requires that the court construe penal statutes strictly and interpret ambiguous language in favor of a criminal defendant. <u>D.A.,</u>

<u>supra</u>, 191 <u>N.J.</u> at 164-65. At the heart of this canon is the requirement of due process. <u>In re Suspension of DeMarco</u>, 83 <u>N.J.</u> 25, 36 (1980). "No one shall be punished for a crime unless both that crime and its punishment are clearly set forth in positive law." <u>Ibid.</u> Statutes "must give persons of ordinary intelligence fair notice of what conduct is prohibited and what consequences may follow violation of the law." <u>State v. Channel Home Ctrs.</u>, 199 <u>N.J. Super.</u> 483, 489 (App. Div. 1985). "It is, therefore, inappropriate to supply missing connections in criminal statutes that persons of ordinary intelligence would not discover." <u>Ibid.</u>

N.J.S.A. 2C:40-26 is not based on a model statute. Ten other states, however, have implemented similar statutes which impose additional, significant penalties on those found operating a motor vehicle during their suspension period for driving while intoxicated or refusing a chemical test. In two of the states that have interpreted comparable statutes, the rule of lenity has been found to control.

In Connecticut, for example, a person who drives while suspended for DWI-related offenses is subject to a fine and imprisonment of up to one year. <u>Conn. Gen. Stat.</u> § 14-215(c)(1) (2014). The statute, however, does not specify whether a person can be convicted if the determinate suspension term ended but

18

the person did not administratively restore his or her license. In State v. Cook, a defendant was not subjected to enhanced penalties for driving while suspended after the period of suspension had expired, but before he had been administratively reinstated, because the court interpreted the law to mean exposure was limited to those serving the determinate term only. 653 A.2d 829, 831 (Conn. App. Ct. 1995). The court observed that because the consequences were penal, the statute should be strictly construed in favor of the accused. Ibid.

Oregon Revised Statutes § 811.182(3) (2013) makes it a felony to drive "while suspended or revoked . . . if the revocation resulted from a conviction for felony driving while under the influence of intoxicants." Another statute, Oregon Revised Statutes § 807.010 (2013), makes it a misdemeanor to drive without driving privileges. In State v. Hammerton, the defendants were convicted under a statute specifying that the license "revocation shall be for a period of one year" and that driving privileges would not be reinstated until the person complied with certain administrative requirements. 886 P.2d 1012, 1016 (Or. 1994). The court determined that when read together, the relevant statutes created a statutory scheme contemplating a finite license revocation period during which the enhanced penalties could be imposed. Ibid. The defendants,

whose period of revocation had ended but who had not applied for reinstatement, could therefore only be charged with the lesser infraction of driving without driving privileges, not felony driving while suspended. Id. at 1017.

Unlike N.J.S.A. 2C:40-26, Pennsylvania's statute explicitly states that a person can be convicted of driving while suspended for a previous intoxication offense "until the person has had the operating privilege restored." 75 Pa. Cons. Stat. § 1543(b)(2) (2014). Therefore a Pennsylvania driver can be convicted even after the determinate period of suspension has expired. Commonwealth v. Downs, 739 A.2d 569 (Pa. Super. Ct. 1999).[3]

Even if we were to find that the legislative intent was unclear from the plain language of the statute, which we do not, the rule of lenity would require us to render an interpretation favoring these defendants so that none are punished for a crime not clearly articulated. State v. Regis, 208 N.J. 439, 451

---

[3] Although Hawaii, Maine, Minnesota, Oklahoma, and Virginia have statutes providing for enhanced penalties for driving after being suspended for alcohol-related offenses, to this date, the statutes have not been interpreted. See Haw. Rev. Stat. § 291E-62 (2014), Me. Rev. Stat. tit. 29-A, § 2412-A (2014), Minn. Stat. § 171.24 (2014), Okla. Stat. tit. 47, § 6-205.1 (2013), Va. Code Ann. §§ 46.2-301.1; -357 (2014). Maryland's statutes provide enhanced penalties for driving while suspended, but do not include a criminal conviction or jail time. See Md. Code Ann., Transp. § 303 (LexisNexis 2014).

(2011).  The rule "is applied only if a statute is ambiguous, and that ambiguity is not resolved by a review of 'all sources of legislative intent.'"  Id. at 452 (quoting D.A., supra, 191 N.J. at 165 (quotation omitted)).  Whatever ambiguity exists in this statute must be construed in favor of the defendants.

D.

In furtherance of its position, the State claims that the penalties associated with DWI and refusal, in and of themselves, support a finding that such suspensions "continue" until the license is administratively restored.  The State draws our attention to N.J.S.A. 39:4-50(b):

> A person convicted under this section must satisfy the screening, evaluation, referral, program and fee requirements of the Division of Alcoholism and Drug Abuse's Intoxicated Driving Program Unit, and of the Intoxicated Driver Resource Centers and a program of alcohol and drug education and highway safety, as prescribed by the chief administrator.  The sentencing court shall inform the person convicted that failure to satisfy such requirements shall result in a mandatory two-day term of imprisonment in a county jail and a driver license revocation or suspension and continuation of revocation or suspension until such requirements are satisfied, unless stayed by court order[.]

N.J.A.C. 10:162-2.2 further describes the consequences when a driver fails to comply with an N.J.S.A. 39:4-50(b) sentence:

> (a)   Failure on the part of the client to appear at an Intoxicated Driver Resource Center shall result in a referral to Division of Motor Vehicles for appropriate action, and, referral to the court of conviction for appropriate action.
>
> (b)   Failure on the part of the client to comply with the course of action or fee schedule required by the Intoxicated Driving Program/Intoxicated Driver Resource Center or the course of action at an affiliated agency or provider shall result in a report of noncompliance to the sentencing court and the Division of Motor Vehicles for appropriate action pursuant to N.J.S.A. 39:4-50(b).

These statutes and regulations, however, relate to motor vehicle licensing consequences and offenses. The requirement that a convicted person satisfy mandatory programs and the consequence that failure to do so may result in a two-day term of imprisonment are entirely different matters from a fourth-degree crime punishable by up to eighteen months of imprisonment carrying a six-month mandatory minimum sentence.[4]

If anything, N.J.S.A. 39:4-50(b) and N.J.A.C. 10:162-2.2 support defendants' position that N.J.S.A. 2C:40-26(a) and (b) apply during the determinate term of suspension. Under these

---

[4] The State cites in further support of its argument an unpublished case. See R. 1:36-3 ("No unpublished opinion shall constitute precedent or be binding upon any court."). Like Zalta, the case relates to motor vehicle penalties, consequences, and license revocation, not prosecution under the Criminal Code.

provisions, in the event of noncompliance with the completion of the Intoxicated Driver Program, as required by N.J.A.C. 39:4-50(a), extension of a DWI suspension is not automatic and requires further administrative action.

The State also argues that unless a second-time offender installs an ignition interlock device under N.J.S.A. 39:4-50(a)(2), his or her license remains suspended "for" DWI. But the statute clearly provides that a person who has been twice found guilty of DWI is required to install an ignition interlock device, and that no license restoration will be approved until compliance occurs. See also N.J.A.C. 13:19-6.4. The focus of the provision and the regulation is to clarify the steps a driver must take to obtain reinstatement. They do not relate to prosecution under the Criminal Code. The consequence of requiring the installation of an interlock device is, therefore, similar to the consequence of requiring payment of an administrative restoration fee. The State's reliance on the motor vehicle code is misplaced and irrelevant to our construction of N.J.S.A. 2C:40-26.

N.J.S.A. 2C:40-26 punishes those who drive while suspended for violations of the DWI and refusal law, by exposing them to a criminal record and incarceration without parole when they drive during the court-imposed period of suspension. The statute's

grave consequences are no doubt also intended to deter the behavior. Criminalizing driving during a period of administrative suspension extending beyond the determinate suspension term for the DWI or refusal offense would not implement legislative intent.

The indictments against McIntyre and Wisser demonstrate the potential harm that results from the State's construction of N.J.S.A. 2C:40-26. Both McIntyre and Wisser had completed their court-imposed suspensions for the DWI violations but were ineligible to restore their licenses due to other non-DWI or non-refusal violations of the Motor Vehicle Code. They nonetheless face the prospect of criminal prosecution. Other drivers who repeatedly drive while suspended are not placed in that jeopardy.

                                III

None of these offenses occurred during the relevant court-imposed period of suspension for DWI and/or refusal under N.J.S.A. 2C:40-26(a) or (b). We therefore affirm the dismissals of indictments in the Perry, Nay, Evans, Papp, and McIntyre appeals. See State v. Salter, 425 N.J. Super. 504, 514 (App. Div. 2012) (indictments should be dismissed if "manifestly deficient or palpably defective."). The denials of the motions

to dismiss the indictments in the Brewer and Wisser appeals are reversed. _Id._

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION