NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4009-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

STEVEN W. ITALIANO,
a/k/a STEVEN ITALIANO,
STEPHEN W. ITALIANO,
STEVE ITLIANO, and
JOHN THOMAS,

    Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**November 1, 2024**

**APPELLATE DIVISION**

Submitted October 2, 2024 – Decided November 1, 2024

Before Judges Currier, Marczyk, and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 21-08-0653.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Bethany L. Deal, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

MARCZYK, J.A.D.

Defendant Steven Italiano appeals from the December 5, 2022 trial court order denying his motion to dismiss the indictment charging him with fourth-degree operating a motor vehicle during a second or subsequent driving while intoxicated (DWI) related license suspension, N.J.S.A. 2C:40-26(b). Following our review of the record and the applicable legal principles, we affirm.

This appeal raises an issue of first impression. We must decide whether a defendant, serving sequentially several consecutive periods of driver's license suspensions imposed for various convictions including DWI offenses, can be charged with violating N.J.S.A. 2C:40-26(b) for driving during the suspension period for a non-DWI-related offense while awaiting commencement of a court-imposed DWI license suspension. For the reasons set forth below, we conclude that because the effective date of defendant's most recent DWI-related sentence was delayed only due to other consecutively imposed accumulated sentences, defendant violated N.J.S.A. 2C:40-26(b) when he operated his vehicle prior to the conclusion of the suspension for his DWI offense.

## I.

On June 23, 2021, Wildwood Crest Police observed defendant's car swerving over the traffic lanes. An officer conducted a motor vehicle stop and requested defendant's credentials. Defendant informed the officer he did not have his license because it was suspended in Pennsylvania for a prior DWI conviction.[1] Defendant was subsequently arrested for DWI[2] and for violating N.J.S.A. 2C:40-26(b).

Defendant has a litany of prior driving offenses dating back to 1999. Between 2001 and 2014, defendant was convicted of four DWI offenses. During this same period, he was also convicted of numerous other motor vehicle violations and criminal offenses including reckless driving, driving while suspended (multiple offenses), chemical test refusal, speeding, failure to maintain an ignition interlock, possession of a controlled substance, and

---

[1] New Jersey refers to the offense as driving while intoxicated. Pennsylvania, where defendant's motor vehicle convictions originated, refers to the offense as driving under the influence or DUI. For the purposes of clarity, we use the acronym DWI in this appeal.

[2] N.J.S.A. 39:4-50.

fleeing from police.[3] These convictions all resulted in license suspensions of varying durations, making him ineligible for restoration of his driving privileges until at least August 2030.[4]

A grand jury indicted defendant for "knowingly . . . operat[ing] a motor vehicle during [the] period of license suspension in violation of [N.J.S.A] 39:3-40, while his license was suspended for a second or subsequent violation of [N.J.S.A.] 39:4-50," thus violating N.J.S.A. 2C:40-26(b). Defendant filed a motion to dismiss the indictment prior to trial, asserting that the element of N.J.S.A. 2C:40-26(b) requiring the offense to have occurred during a DWI-related license suspension was not met because, at the time of the offense, his license was suspended for a non-DWI-related violation. Specifically, defendant asserted he was serving a suspension for an August 2006 out-of-state conviction for fleeing from police. The State countered that the indictment should stand as defendant was, at the time of the offense, court-ordered to serve multiple DWI-related suspensions, making the time of sentencing the effective date of suspension under the statute, regardless of the actual date defendant commenced service of the suspension period.

---

[3] All of these offenses, including defendant's prior DWIs, were from Pennsylvania.

[4] That does not include the twelve-year license suspension imposed in this case.

The trial court issued a written opinion denying defendant's motion. The court held the "indictment should not be dismissed simply because the offense for which [defendant's] license was suspended on the date of his arrest was not a DWI, when he was already sentenced to two[5] future license suspensions for DWIs." It further ruled "it would defeat the Legislature's intent" in enacting N.J.S.A. 2C:40-26(b) "to dismiss the charges . . . simply because [defendant's] DWI suspensions had not yet begun," and defendant's license was "suspended from the time of sentencing," and thus "suspended for D[W]I at the time of th[e] offense, even though [defendant] was still serving non-D[W]I suspensions."

The trial began in April 2023. After opening statements, defendant pled guilty to N.J.S.A. 2C:40-26(b) and the other motor vehicle violations, reserving his right to appeal the denial of his motion to dismiss the indictment.[6]

---

[5] It appears defendant was subject to only one future license suspension. Regardless, defendant had already compiled three prior DWI convictions, thereby implicating N.J.S.A. 2C:40-26(b)'s "second or subsequent" DWI-related suspension provision.

[6] Defendant was sentenced to one year imprisonment with a mandatory six-month period of parole ineligibility on his violation of N.J.S.A. 2C:40-26(b). As to defendant's DWI incurred on the same date, the court sentenced defendant to an additional 180-day term of imprisonment to run concurrently. The court also imposed an additional twelve-year license suspension.

This appeal followed.

## II.

Defendant raises the following point on appeal:

> THE TRIAL COURT SHOULD HAVE GRANTED THE MOTION TO DISMISS THE INDICTMENT BECAUSE [DEFENDANT] WAS NOT SERVING A DWI-LICENSE SUSPENSION WHEN THE INCIDENT OCCURRED.

"At the grand jury stage, the State is not required to present enough evidence to sustain a conviction." State v. Feliciano, 224 N.J. 351, 380 (2016). "As long as the State presents 'some evidence establishing each element of the crime to make out a prima facie case,' a trial court should not dismiss an indictment." Ibid. (quoting State v. Saavedra, 222 N.J. 39, 57 (2015)).

A trial court's denial of a motion to dismiss an indictment is reviewed for an abuse of discretion and should be reversed on appeal only if it clearly appears that the court abused its discretion. Ibid.; see also State v. Bell, 241 N.J. 552, 561 (2020); State v. Twiggs, 233 N.J. 513, 544 (2018). "[A]n indictment should be disturbed only on the 'clearest and plainest ground[s],' and 'only when the indictment is manifestly deficient or palpably defective.'" State v. Shaw, 241 N.J. 223, 239 (2020) (first quoting State v. Perry, 124 N.J. 128, 168 (1991); then quoting State v. Hogan, 144 N.J. 216, 229 (1996)).

6                                                          A-4009-22

When the trial judge's "decision to dismiss relies on a purely legal question, however, we review that determination de novo." Twiggs, 233 N.J. at 532 (citing State v. Cagno, 211 N.J. 488, 505-06 (2012)). "'Because statutory interpretation involves the examination of legal issues,' we apply 'a de novo standard of review.'" State v. Patterson, 435 N.J. Super. 498, 515 (App. Div. 2014) (quoting State ex rel. K.O., 217 N.J. 83, 91 (2014)). "So, we review the questions of law presented in this case de novo and need not defer to the trial court['s] . . . interpretations." Twiggs, 233 N.J. at 532.

A.

Defendant principally argues the State failed to demonstrate—at the time of the offense—he was driving while serving a DWI-related license suspension. He concedes he had "multiple suspensions stacked on top of each other for various reasons." However, he asserts his license was suspended at the time of his arrest based on the 2006 fleeing from police charge. Specifically, defendant contends, "[w]hile [the] DWI suspensions both precede and succeed the fleeing police suspension, they were not the reason . . . [he] could not drive on June 23, 2021."

Defendant maintains the trial court's ruling that his license was in fact suspended for DWI, even though he was still serving a non-DWI suspension, was based on a misreading of State v. Cuccurullo, 228 N.J. Super. 517, 520

(App. Div. 1998).  Defendant contends the trial court should have relied on State v. Perry, 439 N.J. Super. 514 (App. Div. 2015), which he asserts is "the definitive case on this issue, which holds that N.J.S.A. 2C:40-26 only applies when a defendant drives while serving a DWI-license suspension."

B.

The interpretation of a statute is a legal question.  State v. Revie, 220 N.J. 126, 132 (2014).  "As such, we review the dispute de novo, unconstrained by deference to the decisions of the trial court . . . ."  State v. Grate, 220 N.J. 317, 329 (2015); see also State v. Hubbard, 222 N.J. 249, 263 (2015).

When we interpret a statute, "[t]he overriding goal is to determine as best we can the intent of the Legislature, and to give effect to that intent." State v. Robinson, 217 N.J. 594, 604 (2014) (quoting State v. Hudson, 209 N.J. 513, 529 (2012)).  This review requires

> [w]e begin by "read[ing] and examin[ing] the text of the act and draw[ing] inferences concerning the meaning from its composition and structure."  2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 47:1 (7th ed. 2007).  That common sense canon of statutory construction is reflected also in the legislative directive codified at N.J.S.A. 1:1-1:
>
> > In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the

A-4009-22

> manifest intent of the [L]egislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.
>
> If a plain-language reading of the statute "leads to a clear and unambiguous result, then our interpretive process is over." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195-96 (2007).
>
> [State v. Hupka, 203 N.J. 222, 231-32 (2010) (alterations in original).]

When reviewing a statute's plain language, we do not parse its provisions. Rather, we consider "not only the particular statute in question, but also the entire legislative scheme of which it is a part." State v. Olivero, 221 N.J. 632, 639 (2015) (quoting Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129 (1987)).

If our review finds an ambiguity in the statutory language, we then turn to extrinsic evidence. Ibid. When such evidence is needed, we look to a variety of sources, "such as the statute's purpose, legislative history, and statutory context to ascertain the [L]egislature's intent." State v. Thomas, 166 N.J. 560, 567 (2001) (quoting Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 323 (2000)). See also State v. Crawley, 187 N.J. 440, 453 (2006) (resorting to legislative history and related statutes as extrinsic aids to interpret the statute).

> Where a criminal statute defining a crime is at issue, language "susceptible of differing constructions," must be interpreted "to further" the "general purposes" stated in N.J.S.A. 2C:1-2(a) and the "special purposes" of the provision at issue. N.J.S.A. 2C:1-2(a), (c). Most important here is the Code's purpose of giving "fair warning of the nature of the conduct proscribed," N.J.S.A. 2C:1-2(a)(4). Fair notice of prohibited conduct is the fundamental principle underlying the rule of construction calling for resolution of ambiguities in criminal statutes against the State. State v. Gelman, 195 N.J. 475, 482 (2008).
>
> [State v. J.B.W., 434 N.J. Super. 550, 554 (App. Div. 2014).]

Also, "[w]hen the text of a statute and extrinsic aids do not enlighten us satisfactorily concerning the Legislature's intent, our obligation is to construe the statute strictly, against the State and in favor of the defendant." State v. Reiner, 180 N.J. 307, 318 (2004). That said, "[e]ven a penal statute should not be construed to reach a ridiculous or absurd result." State v. Wrotny, 221 N.J. Super. 226, 229 (App. Div. 1987) (citing State v. Gill, 47 N.J. 441, 444 (1966)).

Against this backdrop, we turn to the statutory provision at issue in this matter. N.J.S.A. 2C:40-26(b), in pertinent part, provides:

> It shall be a crime of the fourth degree to operate a motor vehicle during the period of license suspension in violation of [N.J.S.A.] 39:3-40, [driving with a suspended license], if the actor's license was suspended or revoked for a second or subsequent violation of [N.J.S.A.] 39:4-50 . . . . A person

10

> convicted of an offense under this subsection shall be
> sentenced by the court to a term of imprisonment.
>
> [(Emphasis added).]

In adopting the statute,

> the Legislature stiffened the sanction for driving with
> a license suspended or revoked due to multiple prior
> DWI or refusal convictions. Before the enactment of
> N.J.S.A. 2C:40-26(b), such an offender only faced the
> sanctions that are set forth outside of the Criminal
> Code in N.J.S.A. 39:3-40(f)(2), a provision that
> authorizes a jail term of between ten and ninety days.
> By contrast, fourth-degree crimes are generally
> punishable by a custodial term of up to eighteen
> months, N.J.S.A. 2C:43-6(a)(4), and, moreover,
> N.J.S.A. 2C:40-26(b) expressly carries a mandatory
> minimum penalty of 180 days in prison.
>
> [State v. Carrigan, 428 N.J. Super. 609, 613-14 (App.
> Div. 2012).]

"The significantly enhanced consequences to driving while suspended were the legislative response to 'reports of fatal or serious accidents that had been caused by recidivist offenders with multiple prior DWI violations.'" Perry, 439 N.J. Super. at 523 (quoting Carrigan, 428 N.J. Super. at 614).

We initially note that defendant's reliance on Perry is unavailing. In Perry, we held that N.J.S.A. 2C:40-26 "criminalizes the operation of a motor vehicle only while the operator is serving the court-imposed term of suspension, and not thereafter." 439 N.J. Super. at 519. However, we did not decide the issue before us in this matter—whether N.J.S.A. 2C:40-26(b)

11

criminalizes driving when a license suspension for a second or subsequent DWI offense has been ordered but is delayed from running due to a defendant's stacked suspensions. Rather, in Perry we addressed only "those driving without reinstatement beyond the court-imposed term of suspension." Id. at 525.

The State in Perry argued that "N.J.S.A. 2C:40-26 must be interpreted to mean that . . . individual[s] can be charged until [they] pay[] the requisite license restoration fees, compl[y] with all administrative requirements, and [are] reinstated . . . ." Id. at 523. We rejected this argument and held that N.J.S.A. 2C:40-26(b) "was intended to apply only when the actor is 'under suspension for those offenses,'" or "while serving the court-imposed term of suspension." Id. at 527 (italicization omitted). However, we noted the statute "is silent about drivers under continuing administrative suspension who did not restore their privileges after being convicted of DWI offenses and completing their determinate suspension terms." Ibid. We further observed the statute "punishes those who drive while suspended for violations of the DWI . . . law . . . when they drive during the court-imposed period of suspension," and it was not intended to criminalize "driving during a period of administrative suspension" when driving privileges could have been restored but for the

A-4009-22

defendant's failure to complete the process for administrative restoration. Id. at 531-32.

Here, defendant, unlike the defendants in Perry, was not driving during a period of administrative suspension after having completed his court-ordered suspension. Rather, he had not yet completed his suspension term for the most recent of his four DWIs. It would be illogical for defendant to avoid a conviction for violating N.J.S.A. 2C:40-26(b), in light of defendant's four prior DWIs, merely because the court-ordered suspension for his latest DWI had not yet commenced because he incurred multiple other intervening license suspensions.

We conclude operation "during the period of license suspension" under N.J.S.A. 2C:40-26(b) includes driving after an imposed suspension of driving privileges for a second or subsequent DWI, which has not commenced because of stacked or yet-to-be-served prior suspensions. The language of the statute does not require defendant to be serving a suspension associated with a particular DWI offense at the time he was operating his vehicle. Rather, the statute makes it a crime to operate "during the period of license suspension . . . if the actor's license was suspended . . . for a second or subsequent" DWI offense.

Here, it is undisputed defendant's driving privileges were, in fact, suspended for a second or subsequent DWI violation—along with a number of other suspensions—despite his serving a suspension for a prior criminal offense when he was arrested. Because defendant operated his vehicle while his license was suspended for a "second or subsequent" DWI, which had not yet been served, he was properly charged with violating N.J.S.A. 2C:40-26(b).

Moreover, defendant's interpretation of N.J.S.A. 2C:40-26(b) is inconsistent with the Legislature's goal in enacting the statute, which was designed to punish recidivist drunk drivers. Defendant's interpretation would defeat the legislative objective of the statute and allow defendant to avoid the penalties set forth in the statute based solely on the fact he had multiple other suspensions.

In the context of applying the enhanced penalties under N.J.S.A. 39:3-40 for driving while suspended for DWI, we previously determined a defendant is "'under suspension' from the time that the suspension is imposed even though the period of suspension may not begin until later." Cuccurullo, 228 N.J. Super. at 520. The defendant in Cuccurullo asserted that the enhanced penalties should not apply to him "because when he committed the present offense, his DWI suspension period had not begun and therefore he was not a 'person . . . under suspension issued pursuant to [N.J.S.A.] 39:4-50.'" Ibid.

14

(quoting N.J.S.A. 39:3-40(f)(2)). We disagreed, stating that "[a] person is 'under suspension' from the time that the suspension is imposed even though the period of suspension may not begin until later." Ibid. We further observed:

> Were defendant's argument accepted, the more unserved suspension time a driver has accumulated before his DWI suspension is imposed, the longer thereafter he could continue to drive before being subject to the [driving while suspended] statute's enhanced penalties. We may not attribute to the Legislature an intent to produce such an absurd result.
>
> [Id. at 521.]

We adopt here the rationale we utilized in Cuccurullo. We are unpersuaded by defendant's argument that, essentially, he could only be convicted of violating N.J.S.A. 2C:40-26(b) beginning in the year 2027 for his most recent DWI because only then would his other non-DWI suspensions end and his already-imposed fourth DWI suspension commence. This argument would lead to an anomalous result and reward defendant for accumulating a multitude of other suspensions. We hold that when defendants drive while suspended for second or subsequent DWIs, they are subject to the penalties of N.J.S.A. 2C:40-26(b) during the pendency of any other suspensions until the actual completion of their DWI-related suspensions.

15

Defendant attempts to distinguish <u>Cuccurullo</u> because it was "in the context of applying motor vehicle penalties" rather than criminal penalties under N.J.S.A. 2C:40-26. This distinction is immaterial in the present context, as the crux of the <u>Cuccurullo</u> decision was to determine the meaning of "under suspension issued pursuant to [N.J.S.A] 39:4-50." <u>Cuccurullo</u>, 228 N.J. Super. at 520 (quoting N.J.S.A. 39:3-40).

Like the statutory language interpreted in <u>Cuccurullo</u>, N.J.S.A. 2C:40-26(b)'s language addresses conduct occurring "'during the period of license suspension' . . . if the actor's license was suspended . . . for a second or subsequent violation of [N.J.S.A.] 39:4-50 . . . ." N.J.S.A. 2C:40-26(b). The statutes' shared purpose is "to discourage [individuals] from driving from the moment [their] DWI license suspension[s] [are] imposed until after [they] ha[ve] served the DWI suspension." <u>Cuccurullo</u>, 228 N.J. Super. at 521. The Supreme Court noted there is no meaningful distinction between the language in the two statutes, because "[a]lthough N.J.S.A 39:3-40 and N.J.S.A. 2C:40-26 are not found within the same title of the Code, they operate in tandem to establish escalating consequences for the same conduct—driving while suspended—based on a defendant's number of past DWI or Refusal convictions." <u>State v. Konecny</u>, 250 N.J. 321, 337 (2022)

A-4009-22

Our interpretation of N.J.S.A. 2C:40-26(b) is also guided by the Legislature's intent to prevent "fatal or serious accidents that had been caused by recidivist offenders with multiple prior DWI violations, who nevertheless were driving with a suspended license[,]" Carrigan, 428 N.J. Super. at 614 (citing Assemb. Comm. Report to A.4303 (Jan. 11, 2010)), but also to avoid an irrational result. See State v. Haliski, 140 N.J. 1, 9 (1995) ("[W]hatever be the rule of [statutory] construction, it is subordinate to the goal of effectuating the legislative plan as it may be gathered from the enactment 'when read in full light of its history, purpose and context.'" (quoting Gill, 47 N.J. at 444 (alterations in original))).

Defendant's interpretation of N.J.S.A. 2C:40-26(b) would allow a defendant under suspension with multiple DWI convictions to avoid the custodial penalty intended by the Legislature simply because of a significant prior history of suspensions that must be served and completed before the DWI-related suspension period. We decline to adopt this cramped reading of the statute. A defendant completing service of a license suspension term for a prior traffic or criminal offense, which precluded the commencement of an imposed license suspension following multiple convictions for DWI, is subject to N.J.S.A. 2C:40-26 and the criminal penalties intended to punish such conduct.

17

Based on the foregoing reasons, we affirm the trial court's order denying defendant's motion to dismiss the indictment. To the extent we have not otherwise addressed defendant's arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4009-22