55 A.3d 87

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. CHRISTOPHER CARRIGAN, DEFENDANT–
RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 22, 2012—Decided November 15, 2012.

610

612

Before Judges SABATINO, FASCIALE and MAVEN.

*Samuel J. Marzarella,* Supervising Assistant Prosecutor, argued the cause for appellant (*Marlene Lynch Ford,* Ocean County Prosecutor, attorney; *Mr. Marzarella,* of counsel and on the brief).

*James K. Smith, Jr.,* Assistant Deputy Public Defender, argued the cause for respondent (*Joseph E. Krakora,* Public Defender, attorney; *Mr. Smith,* of counsel and on the brief; *Melissa A. Barbier,* Assistant Deputy Public Defender, on the brief).

The opinion of the court was delivered by

SABATINO, J.A.D.

The State appeals from the dismissal of a criminal complaint charging defendant Christopher Carrigan with a violation of a relatively new statute, *N.J.S.A.* 2C:40–26(b). The statute, which became effective on August 1, 2011, makes it a fourth-degree crime for a motorist to operate a vehicle at a time when his or her driver's license is suspended or revoked for a second or subse-

quent conviction for driving while intoxicated ("DWI") or refusal to submit to an alcohol breath test. Defendant was charged with that crime, upon being found driving a car in September 2011 while his license was suspended due to multiple prior DWI offenses.

The trial court dismissed the complaint, concluding that the application of *N.J.S.A.* 2C:40–26(b) to defendant violated ex post facto principles, essentially because his ongoing license suspensions had been imposed before the statute's effective date.

We conclude that a violation of *N.J.S.A.* 2C:40–26(b) comprises a new offense based upon new conduct, and that the statute does not impose retrospective punishment for a prior offense. Hence, the law may be constitutionally applied to drivers with suspended licenses, such as defendant, who are caught driving after August 1, 2011, regardless of whether their DWI-based suspensions were imposed before that date. Consequently, we reverse the trial court's dismissal order and reinstate the criminal complaint.

## I.

## A.

On January 18, 2010, the Legislature enacted the provision at issue, *N.J.S.A.* 2C:40–26(b), which provides that:

It shall be a crime of the fourth degree to operate a motor vehicle during the period of license suspension in violation of [*N.J.S.A.* 39:3–40], if the actor's license was suspended or revoked for a second or subsequent violation of [*N.J.S.A.* 39:4–50, DWI,] or section 2 of [*N.J.S.A.* 39:4–50.4a, refusing to submit to an alcohol breath test]. A person convicted of an offense under this subsection shall be sentenced by the court to a term of imprisonment.

In making such conduct a fourth-degree crime, the Legislature stiffened the sanction for driving with a license suspended or revoked due to multiple prior DWI or refusal convictions. Before the enactment of *N.J.S.A.* 2C:40–26(b), such an offender only faced the sanctions that are set forth outside of the Criminal Code in *N.J.S.A.* 39:3–40(f)(2), a provision that authorizes a jail term of between ten and ninety days. By contrast, fourth-degree crimes

are generally punishable by a custodial term of up to eighteen months, *N.J.S.A.* 2C:43–6(a)(4), and, moreover, *N.J.S.A.* 2C:40–26(b) expressly carries a mandatory minimum penalty of 180 days in prison.

As indicated in its legislative history, the new statute "creates a fourth[-]degree criminal penalty for persons whose driver's licenses are suspended for drunk driving offenses and who, while under suspension for those offenses, unlawfully operate a vehicle." *Assemb. Comm. Report to A.4303* (Jan. 11, 2010). The strengthened penalty was legislatively prompted, at least in part, by reports of fatal or serious accidents that had been caused by recidivist offenders with multiple prior DWI violations, who nevertheless were driving with a suspended license. *Ibid.* The former Director of the Governor's Council on Alcoholism and Drug Awareness endorsed the bill creating this new fourth-degree crime, further recommending that the State establish "prison facilities specifically for the rehabilitation of offenders with multiple D[W]I offenses." *Ibid.*

Of particular significance to the present appeal, the Legislature declared *N.J.S.A.* 2C:40–26(b) effective as of August 1, 2011, although the statute was enacted on January 18, 2010. *See L.* 2009, *c.* 333, §§ 1–2. Hence, there was a lengthy transitional period of more than eighteen months between the statute's passage and its effective date. The Legislature further authorized the Motor Vehicle Commission to "take any anticipatory administrative action prior to the effective date necessary for its *timely implementation.*" *Ibid.* (emphasis added); *see also Assemb. Comm. Report, supra.,* (using identical language).

B.

About seven weeks after *N.J.S.A.* 2C:40–26(b) became effective, a Manchester Township patrolman arrested defendant on September 27, 2011 after observing his car swerve. The patrolman noted that defendant smelled of alcohol and had bloodshot eyes, and that there was an open beer can in the back of the car. After defendant failed several field sobriety tests, he was arrested and

taken to the police headquarters, where he refused to provide a breath sample. The patrolman issued defendant summonses for DWI, *N.J.S.A.* 39:4–50; driving with a suspended license, *N.J.S.A.* 39:3–40; failure to maintain headlamps, *N.J.S.A.* 39:3–66; refusal to submit to a breath test, *N.J.S.A.* 39:4–50.2; and reckless driving, *N.J.S.A.* 39:4–96.

Defendant's lengthy driver abstract reveals that between 1983 and 2010 he was convicted for DWI at least thirteen times, and he was convicted twice during that period for refusing to submit to a breath test. He also has been convicted twenty-three times for illegally driving with a license that had been suspended or revoked. According to the abstract, at least eight of those DWI-based or refusal-based convictions and related suspensions were issued after September 27, 2001, i.e., within the decade before defendant's present offenses. *See N.J.S.A.* 39:4–50(a)(3) (requiring a mandatory license revocation of ten years for a third or subsequent DWI or refusal conviction).

Defendant's most recent conviction for DWI preceding the instant September 27, 2011 arrest was entered on October 22, 2010. That particular conviction resulted from a plea agreement in the municipal court in Manchester Township. During the proceedings in that 2010 matter, the municipal judge informed defendant that if he violated the license suspension imposed pursuant to the plea agreement, he faced a "10– to 90–day jail sentence...." Defendant acknowledged to the judge that he had discussed the plea with his counsel, that he was pleading guilty of his own free will, and that he understood he was waiving his right to a trial. Defendant further stated on the record that he had no questions for the judge or his counsel, that he was satisfied with the services of his counsel, and that they had "gone over everything" he felt necessary.

In sentencing defendant that same day, the judge in Manchester Township stated:

> Now as part of your sentence for DWI your license has been revoked. If you continue to drive you will be subject to penalties for driving on the revoked list.

> You will also be subject to the following initial penalties: You will be fined $500 and your driver's license will be suspended for an additional one to two years and you will be imprisoned for . . . 10 to 90 days.

In light of this history, it is beyond dispute that defendant's license remained suspended as of the time when he was arrested on September 27, 2011. It is also indisputable that those suspensions were based upon two or more prior DWI or refusal convictions.

Given defendant's status as a suspended repeat DWI offender, the State served a criminal complaint upon him on October 5, 2011, charging him with a violation of *N.J.S.A.* 2C:40–26(b). This criminal complaint was served upon defendant in addition to the *Title* 39 summonses that had been previously issued.

Defendant thereafter moved in the Law Division to dismiss the charges under *N.J.S.A.* 2C:40–26(b), on the grounds of legal insufficiency. In essence, defendant argued that the application of this new criminal statute to him would comprise retroactive punishment, thereby violating ex post facto principles under the United States and New Jersey Constitutions. He maintained that the enhanced penalties under the new law, including the mandatory 180–day prison term, would impermissibly alter the terms of the suspensions that had been imposed upon him prior to the statute's enactment. So construed, *N.J.S.A.* 2C:40–26(b) allegedly would be an unconstitutional ex post facto law as applied to defendant, because it would make the penalties for his prior DWI and refusal convictions "harsher and more severe." Defendant also emphasized that he had no advance notice of the criminal statute when his predicate convictions and licensure suspensions were entered.

The State argued, in opposition, that defendant's past DWI and refusal convictions are separate and distinct from the present criminal charge of driving with a suspended license in violation of *N.J.S.A.* 2C:40–26(b). If one conceives of the circumstances in that manner, the State submitted, the criminal statute cannot be deemed an ex post facto law as applied to defendant.

After briefing and oral argument, the Law Division judge issued an order on February 23, 2012 dismissing the criminal complaint. In his accompanying written opinion, the judge recognized that the allegations provide an adequate factual basis for convicting defendant under *N.J.S.A.* 2C:40–26(b). Nevertheless, the judge reasoned that the statute is in violation of ex post facto principles as applied to defendant, because such application would increase the penalties imposed for his DWI convictions that preceded the new law's effective date. As the judge put it, "[e]ssentially the defendant's consequences of his [prior] DWI [convictions] are now changed."

In addition, the judge discerned no legislative history indicating an intent to apply *N.J.S.A.* 2C:40–26(b) to predicate DWI offenses and suspensions that arose prior to the criminal statute's effective date. Applying the principle that penal statutes are generally to be strictly construed in favor of defendants, the judge concluded that defendant's motion to dismiss should be granted.

The State now appeals, arguing that the Law Division judge misapplied ex post facto and retroactivity concepts in dismissing the complaint. It maintains that *N.J.S.A.* 2C:40–26(b) may be constitutionally applied to defendant, and to other suspended drivers who are similarly situated, so long as the illegal driving now at issue takes place on or after August 1, 2011.

## II.

### A.

Before addressing the constitutional ex post facto issues presented, we must first consider whether *N.J.S.A.* 2C:40–26(b) is intended to cover drivers whose licenses are suspended or revoked because of DWI-based or refusal-based convictions that preceded August 1, 2011. We answer that question in the affirmative.

"The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874

A.2d 1039 (2005). A court should "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." *Ibid.* (citations omitted); *accord Soto v. Scaringelli,* 189 *N.J.* 558, 569, 917 A.2d 734 (2007). In situations where the meaning of a statute is not self-evident, the court should look to judicial interpretation, rules of construction, or extrinsic matters. *See Bergen Commercial Bank v. Sisler,* 157 *N.J.* 188, 202, 723 A.2d 944 (1999). Ultimately, a court's role when analyzing a statute is to give effect to the Legislature's intent as evidenced by the "language of [the] statute, the policy behind it, concepts of reasonableness and legislative history." *Johnson Mach. Co. v. Manville Sales Corp.,* 248 *N.J.Super.* 285, 304, 590 A.2d 1206 (App.Div.1991).

▮ We are also mindful that "prospective application of a statute is favored over retroactive application." *Oberhand v. Dir., Div. of Taxation,* 193 *N.J.* 558, 570, 940 A.2d 1202 (2008); *accord State v. Parolin,* 171 *N.J.* 223, 233, 793 A.2d 638 (2002). This is because retroactive application of new laws can involve "a high risk of being unfair." *Oberhand, supra,* 193 *N.J.* at 570, 940 A.2d 1202 (quoting *Gibbons v. Gibbons,* 86 *N.J.* 515, 522, 432 A.2d 80 (1981)).

▮ Even so, retroactive application of a law is sometimes appropriate, and the general rule against it should not be "applied mechanistically to every case." *Gibbons, supra,* 86 *N.J.* at 522, 432 A.2d 80. "[I]f the Legislature expresses an intent that the statute is to be applied retroactively, the statute should be so applied." *Oberhand, supra,* 193 *N.J.* at 571, 940 A.2d 1202. Such an expression can be contained within the language of the statute, or implied in order to "make the statute workable or to give it the most sensible interpretation." *Ibid.* (quoting *Gibbons, supra,* 86 *N.J.* at 522, 432 A.2d 80). Retroactive application may also be appropriate in other situations where it "is the better course," such as when the statute is ameliorative or curative. *Ibid.* Moreover, retroactive application is given "when the expectations of the

parties so warrant." *Botis v. Estate of Kudrick,* 421 *N.J.Super.* 107, 116, 22 *A.*3d 975 (App.Div.2011) (quoting *Cruz v. Cent. Jersey Landscaping, Inc.,* 195 *N.J.* 33, 46, 947 *A.*2d 1228 (2008)).

That said, the correct inquiry here is not whether *N.J.S.A.* 2C:40–26(b) applies "retroactively" to defendant's conduct on September 27, 2011. Such conduct plainly came after the statute's August 1, 2011 effective date. The more precise question of legislative interpretation here is whether the statute is intended to extend to cases such as this one involving predicate suspensions that were imposed before August 1, 2011, but which would criminalize a defendant's post-August 1, 2011 conduct.

The plain wording of *N.J.S.A.* 2C:40–26(b) supports the State's position that the statute is intended to impose enhanced penalties upon DWI recidivists who drive after August 1, 2011 with suspended or revoked licenses, irrespective of whether their predicate convictions were entered before that date. The statute unconditionally states that it "shall be a crime of the fourth degree to operate a motor vehicle during the period of license suspension," *N.J.S.A.* 2C:40–26(b), signifying that the statute is indifferent as to whether the suspension began before or after the law's effective date. Taken on its literal terms, the statute is expressed in a manner that logically extends to suspensions that began before its effective date.

Moreover, a contrary interpretation of *N.J.S.A.* 2C:40–26(b) would effectively delay, for many recidivist drivers, the impact of the statute's criminal sanctions for up to a decade, i.e., the ten-year period of mandatory suspension imposed for third or subsequent offenses under *N.J.S.A.* 39:4–50(a)(3). Given the committee materials that we have previously cited, *supra,* in Part I, indicating a desire to achieve "timely implementation" of the new law, we do not believe that the Legislature intended to postpone a full phase-in of the statute for up to a decade. The manifest public policy concerns over drunk driver recidivism and public safety that prompted this tougher measure would be severely thwarted by

reading into the law an implied exclusion of drivers whose ongoing suspensions predate August 1, 2011.

## B.

■ We now turn to the ex post facto issues. The Federal Constitution provides that "no State shall . . . pass any . . . ex post facto Law. . . ." *U.S. Const.* art. I, § 10, cl. 1; *see also N.J. Const.* art. IV, § 7, ¶ 3 ("The Legislature shall not pass any . . . ex post facto law. . . ."). The federal ex post facto clause "bars application of a law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime" at the time the crime was committed. *Johnson v. United States,* 529 *U.S.* 694, 699, 120 *S.Ct.* 1795, 1800, 146 *L.Ed.*2d 727, 735 (2000) (internal quotation omitted).

At the time the United States Constitution was ratified, the term "ex post facto law" already had an established meaning. *Collins v. Youngblood,* 497 *U.S.* 37, 41, 110 *S.Ct.* 2715, 2719, 111 *L.Ed.*2d 30, 38 (1990). As Justice Chase explained over two hundred years ago, the ex post facto clause interdicts the following kinds of legislative acts:

1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

[*Calder v. Bull,* 3 *U.S.* (3 *Dall.*) 386, 390, 1 *L.Ed.* 648 (1798).]

Defendant has also invoked the ex post facto clause set forth in art. IV, § 7, ¶ 3 of the 1947 New Jersey Constitution. This invocation does not add any analytic force to his arguments, inasmuch as our State's own ex post facto clause has been construed to be "not broader than its federal counterpart." *In re Civil Commitment of W.X.C.,* 204 *N.J.* 179, 187, 8 *A.*3d 174 (2010), *cert. denied,* —— *U.S.* ——, 131 *S.Ct.* 1702, 179 *L.Ed.*2d 635 (2011).

■ The analytical framework for determining whether a law violates either the federal or New Jersey ex post facto clause is essentially the same. Those constitutional enactments similarly prevent the operation of laws which: "(1) punish as a crime an act previously committed, which was innocent when done; (2) make more burdensome the punishment for a crime, after its commission; or (3) deprive a defendant of any defense available according to the law at the time when the crime was committed." *Id.* at 187–88, 8 *A.*3d 174 (quoting *State v. Muhammad,* 145 *N.J.* 23, 56, 678 *A.*2d 164 (1996)).

■ Having considered these principles, we agree with the State that there is no ex post facto violation presented here. Although license suspensions imposed because of prior DWI and refusal convictions are relevant to whether a defendant has violated *N.J.S.A.* 2C:40–26(b), the statute only applies to violations committed after its effective date of August 1, 2011. The law does not punish acts committed before its effective date. Nor does it deprive a driver of a defense that existed at the time an offense was committed. We therefore readily reject the first and third alternative grounds for an ex post facto violation, under the applicable standards expressed in *Muhammad* and more recently, in *W.X.C.*

Defendant's primary argument essentially focuses upon the second alternative test set forth in *Muhammad, supra,* 145 *N.J.* at 56, 678 *A.*2d 164 and *W.X.C., supra,* 204 *N.J.* at 187, 8 *A.*3d 174, i.e., does the statute "make more burdensome the punishment for a crime, after its commission"? In this vein, defendant claims that *N.J.S.A.* 2C:40–26(b) makes the punishment for his past DWI and refusal convictions more stringent, in that he now faces a minimum of 180 days in jail if he drives while his license is still suspended, as opposed to the maximum ninety-day jail sanction available under *N.J.S.A.* 39:3–40(f)(2).

Defendant likens his circumstances to an instance where a new law unconstitutionally attempts to make the terms of a criminal sentence, such as the terms of parole or probation, more stringent

after the fact. *Cf. Johnson, supra,* 529 *U.S.* 694, 120 *S.Ct.* 1795, 146 *L.Ed.*2d 727 (involving a statute that retroactively increased penalties for violating the terms of parole). We reject this conception of what *N.J.S.A.* 2C:40–26(b) accomplishes.

*N.J.S.A.* 2C:40–26(b) does not change the duration of the license suspensions that were previously imposed upon him before the new law took effect. His ten-year suspensions, duly imposed under *N.J.S.A.* 39:4–50(a)(3), have not been lengthened. Nor is he prohibited during his periods of suspension from doing anything that he could not have lawfully done before. The only thing that is different is that if defendant commits a new offense by getting behind the wheel after August 1, 2011 while still under suspension, he now faces a criminal penalty for that new conduct. There is nothing unconstitutional about treating such prior offenses as enhancement factors for wrongful conduct that post-dates the new law.

Similar principles were applied and similar findings of constitutionality were instructively reached in two prior cases, *State v. Oliver,* 298 *N.J.Super.* 538, 689 *A.*2d 876 (Law Div.1996), *aff'd,* 316 *N.J.Super.* 592, 720 *A.*2d 1001 (App.Div.1998), *aff'd,* 162 *N.J.* 580, 745 *A.*2d 1165 (2000) and *State v. Zeikel,* 423 *N.J.Super.* 34, 30 *A.*3d 339 (App.Div.2011).

In *Oliver, supra,* a jury found the defendant guilty of first-degree robbery, second-degree aggravated assault, and third-degree aggravated assault in September 1996 for crimes committed in December 1995. 298 *N.J.Super.* at 545–46, 689 *A.*2d 876. The "Three Strikes" Act, which strengthened the criminal penalties for various offenses, became effective in June 1995. *Id.* at 545 n. 2, 689 *A.*2d 876. The defendant had multiple robbery convictions predating the Three Strikes Act, which the trial court considered as predicate grounds for giving the defendant a sentence for a term of life imprisonment for his 1996 robbery conviction pursuant to the statute. *Id.* at 563–64, 566, 689 *A.*2d 876. In finding that the application of the Three Strikes Act in this fashion did not violate the ex post facto clause, the court reasoned that:

> The punishment mandated under the Act is for a third "strike," not a first or second strike. The sentences previously imposed on the defendant are not enhanced by his third conviction. The earlier convictions or strikes merely provide the defendant's background to be considered in sentencing for the third offense. [*Id.* at 547, 689 *A.*2d 876.]

The trial court's decision in *Oliver* was affirmed by both this court and the Supreme Court. *See generally,* 316 *N.J.Super.* 592, 720 *A.*2d 1001; *see also* 162 *N.J.* at 585–86, 745 *A.*2d 1165 (affirming and noting that the Law Division "accurately stated the relevant legal principles").

In *Zeikel, supra,* the defendant pleaded guilty to DWI in June 2010 for an offense committed in December 2009. 423 *N.J.Super.* at 38, 30 *A.*3d 339. At the time, he had three previous DWI convictions, including two from the State of New York under a similar statute. *Id.* at 38–39, 48–49, 30 *A.*3d 339. The prior DWI convictions were from 1981, 1984, and 1994. *Id.* at 38–39, 30 *A.*3d 339. In 1997, New Jersey added an amendment to its DWI statute which allowed out-of-state DWI convictions to count toward the increased penalties given to recidivist DWI offenders. *Id.* at 41, 30 *A.*3d 339. The trial court counted the defendant's New York DWI convictions as prior convictions under New Jersey's DWI statute, even though the New York convictions antedated the 1997 amendment. *Id.* at 40, 30 *A.*3d 339. This court concluded that that did not violate the prohibition on ex post facto laws:

> The quoted amendment to [the DWI statute], concerning the effect of out-of-state convictions, was enacted in December 1997, and [the] defendant's DWI violation occurred twelve years later in December 2009. *Because the law under which [the] defendant was sentenced was enacted before the present triggering offense, [the] defendant's sentence does not offend the ex post facto clauses of the federal or State constitutions.*
> [*Id.* at 42–43, 30 *A.*3d 339 (emphasis added).]

The present case is sufficiently similar to *Zeikel* and *Oliver* to warrant the same conclusion. To repeat the relevant timeline: defendant was convicted for DWI and refusal offenses multiple times prior to 2011 and his license was accordingly suspended, a criminal statute then came into effect that punishes recidivist DWI offenders for driving without a license, and defendant was subse-

quently caught driving without a license. Defendant is not being punished under *N.J.S.A.* 2C:40–26(b) for his prior DWI and refusal offenses; he is being punished for driving without a license after the new statute took effect.

 It does not offend the ex post facto clause to apply *N.J.S.A.* 2C:40–26(b) to defendant because "the law under which defendant [is being charged] was enacted before the present triggering offense . . . ." *Zeikel, supra,* 423 *N.J.Super.* at 42–43, 30 *A.*3d 339. As the United States Supreme Court has recognized, recidivist statutes such as *N.J.S.A.* 2C:40–26(b) do not contravene ex post facto prohibitions because they "do not change the penalty imposed for the earlier conviction." *Nichols v. United States,* 511 *U.S.* 738, 747, 114 *S.Ct.* 1921, 1927, 128 *L.Ed.*2d 745, 754 (1994).

 Lastly, we note that it is inconsequential that defendant was told by the municipal judge at the time of his plea and sentencing in October 2011 that he then faced a jail term of up to ninety days for future violations of his license suspension. That ninety-day jail exposure was accurate under the law as it existed in October 2011. *N.J.S.A.* 39:3–40(f)(2). The judge was not required to explain to defendant the terms of a new statute that had not yet taken effect.[1] Defendant has not moved to withdraw that particular guilty plea from 2010, *cf. State v. Slater,* 198 *N.J.* 145, 966 *A.*2d 461 (2009), nor the guilty pleas for any of the other seven predicate DWI-related offenses that produced his ongoing suspensions.

## III.

Because the Legislature intended *N.J.S.A.* 2C:40–26(b) to apply to persons such as defendant, and because the law does not violate

---

[1] We note that the Administrative Office of the Courts has since generated a new model plea form that specifies the criminal penalties now in force pursuant to *N.J.S.A.* 2C:40–26(b).

ex post facto principles, we reverse the dismissal of the criminal complaint and remand for further proceedings.

Reversed and remanded.