NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2445-14T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROBERT LUZHAK,

    Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**April 27, 2016**

**APPELLATE DIVISION**

Argued April 6, 2016 — Decided April 27, 2016

Before Judges Ostrer, Haas and Manahan.[1]

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 13-12-1521.

Kenneth A. Vercammen argued the cause for appellant.

Brian D. Gillet, Deputy First Assistant Prosecutor, argued the cause for respondent (Andrew C. Carey, Middlesex County Prosecutor, attorney; Mr. Gillet, of counsel and on the brief).

The opinion of the court was delivered by

MANAHAN, J.A.D.

Defendant Robert Luzhak appeals from his conviction for violating N.J.S.A. 2C:40-26(b) by driving during a second

___

[1] Judge Ostrer did not participate in oral argument.  He joins the opinion with the consent of counsel.  R. 2:13-2(b).

license suspension for driving while intoxicated (DWI). We affirm.

On October 13, 2013, defendant was issued a motor vehicle summons in Woodbridge for driving with a suspended license, N.J.S.A. 39:3-40, following a minor car accident in a parking lot. At the time, defendant had two prior DWI convictions: a March 2013 conviction in Maryland, and an April 2010 conviction in New Jersey.

Defendant was indicted by a Middlesex County Grand Jury on December 19, 2013, for fourth-degree operating a motor vehicle during a second license suspension stemming from a DWI, in violation of N.J.S.A. 2C:40-26(b). Defendant filed a motion to dismiss the indictment, arguing the March 2013 conviction in Maryland did not qualify as a predicate DWI conviction pursuant to N.J.S.A. 2C:40-26(b). The motion was denied on August 21, 2014. Thereafter, defendant filed a motion to bar entry of his motor vehicle abstract into evidence during trial, which was denied on October 23, 2014.

On the same date the second motion was denied, defendant pled guilty to the indictment and to the motor vehicle summons. During the plea colloquy, defendant admitted to pleading guilty to "the Maryland equivalent" of a DWI, that he had a prior DWI offense in New Jersey, and that he knowingly operated a motor

vehicle while his license was suspended in connection with the Maryland DWI. On January 5, 2015, defendant was sentenced to 180 days in jail on the indictable charge with no eligibility of parole, plus additional fines and penalties. He was sentenced to a term of ten days in jail on the motor vehicle summons, concurrent to the sentence on the indictable offense. His driving privileges were suspended for one year consecutive to any current suspension. The sentence was stayed pending appeal.

On appeal, defendant raises the following arguments:

POINT I

THE INDICTMENT SHOULD HAVE BEEN DISMISSED SINCE DEFENDANT ONLY HAD ONE "CONVICTION" FOR [VIOLATING N.J.S.A. 39:4-50] AND THE STATUTE REQUIRES A SECOND VIOLATION OF [N.J.S.A. 39:4-50].

POINT II

THE COURT SHOULD HAVE GRANTED THE MOTION TO BAR THE HEARSAY [MOTOR VEHICLE COMMISSION] ABSTRACT AT TRIAL CONTAINING HEARSAY FROM MARYLAND. THE COURT IMPROPERLY GRANTED THE STATE'S CROSS-MOTION TO ADMIT THE [MOTOR VEHICLE COMMISSION] ABSTRACT AS A BUSINESS RECORD WITHOUT WITNESS TESTIMONY FROM MARYLAND.

We first address defendant's argument that the motion to dismiss the indictment should have been granted because N.J.S.A. 2C:40-26(b) does not reference license suspensions from foreign jurisdictions and, therefore, the statute should be interpreted

to specifically require previous license suspensions pursuant to N.J.S.A. 39:4-50.

"Whether an indictment should be dismissed or quashed lies within the discretion of the trial court. Such discretion should not be exercised except on 'the clearest and plainest ground' and an indictment should stand 'unless it is palpably defective.'" State v. N.J. Trade Waste Ass'n, 96 N.J. 8, 18 (1984) (quoting State v. Weleck, 10 N.J. 355, 364 (1952) (citations omitted)). Further, "[a] trial court's exercise of this discretionary power will not be disturbed on appeal 'unless it has been clearly abused.'" State v. Warmbrun, 277 N.J. Super. 51, 60 (App. Div. 1994), certif. denied, 140 N.J. 277 (1995) (quoting Weleck, supra, 10 N.J. at 364 (citations omitted)). Here, the judge held as a matter of law that the indictment did not suffer from an infirmity requiring its dismissal. We agree.

At the outset, we note that N.J.S.A. 2C:40-26(b) does not contain language that DWI convictions in other jurisdictions qualify as convictions for the purpose of the statute. As such, our decision turns upon the interpretation of the statute. In order to ascertain the Legislature's intention, we first look to the statutory language. DiProspero v. Penn, 183 N.J. 477, 492 (2005). In so doing, we are required to "ascribe to the

statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole[.]" Ibid. (citations omitted). "Ultimately, a court's role when analyzing a statute is to give effect to the Legislature's intent as evidenced by the 'language of [the] statute, the policy behind it, concepts of reasonableness and legislative history.'" State v. Carrigan, 428 N.J. Super. 609, 618 (App. Div. 2012) (quoting Johnson Mach. Co. v. Manville Sales Corp., 248 N.J. Super. 285, 304 (App. Div. 1991)), certif. denied, 213 N.J. 539 (2013).

Our Supreme Court addressed the appropriate manner of statutory interpretation when the language is ambiguous or appears contrary to legislative intent:

> Courts cannot "rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488 (2002). If, however, the Court determines that "a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control." Turner v. First Union Nat'l Bank, 162 N.J. 75, 84 (1999). Furthermore, if a statute's plain language is ambiguous or subject to multiple interpretations, the Court "may consider extrinsic evidence including legislative history and committee reports." [State v. Marquez, 202 N.J. 485, 500 (2010)].
>
> [State v. Frye, 217 N.J. 566, 575 (2014).]

N.J.S.A. 2C:40-26(b) states in pertinent part:

> It shall be a crime of the fourth degree to operate a motor vehicle during the period of license suspension in violation of [N.J.S.A. 39:3-40], if the actor's license was suspended or revoked for a second or subsequent violation of [N.J.S.A. 39:4-50] . . . . A person convicted of an offense under this subsection shall be sentenced by the court to a term of imprisonment.

When N.J.S.A. 2C:40-26 was enacted in 2009, L. 2009, c. 333, § 1, the Senate intended to lodge "criminal penalties for persons whose [drivers'] licenses are suspended for certain drunk driving offenses and who, while under suspension for those offenses, unlawfully operate a motor vehicle." Senate Law and Public Safety and Veterans' Affairs Committee, Statement to S. 2939 (November 23, 2009). In Carrigan, supra, 428 N.J. Super. at 614, we noted that the penalty for violation of N.J.S.A. 2C:40-26(b) was "prompted, at least in part, by reports of fatal or serious accidents that had been caused by recidivist offenders with multiple prior DWI violations, who nevertheless were driving with a suspended license."

The interstate Driver License Compact (DLC), N.J.S.A. 39:5D-1 to -14, enacted in 1966, L. 1966, c. 73, § 1, states:

> It is the policy of each of the party States to:
>
> (1) Promote compliance with the laws, ordinances, and administrative rules and

regulations relating to the operation of motor vehicles by their operators in each of the jurisdictions where such operators drive motor vehicles.

(2) Make the reciprocal recognition of licenses to drive and eligibility therefor more just and equitable by considering the over-all compliance with motor vehicle laws, ordinances and administrative rules and regulations as a condition precedent to the continuance or issuance of any license by reason of which the licensee is authorized or permitted to operate a motor vehicle in any of the party States.

[N.J.S.A. 39:5D-1(b).]

The DLC was enacted "to encourage the reciprocal recognition of motor vehicle violations that occurred in other jurisdictions, thereby increasing the probability that safety on highways would improve overall." State v. Colley, 397 N.J. Super. 214, 219 (App. Div. 2007) (citing State v. Regan, 209 N.J. Super. 596, 602-04 (App. Div. 1986)).[2]

In accord with the DLC, following DWI convictions the licensing authority in the "home [s]tate" (the state which has the power to issue, suspend, or revoke the use of a driver's license, N.J.S.A. 39:5D-2(b)), "shall give the same effect to

_____

[2] We note that Maryland is also a participant in the DLC. Md. Code Ann., Transp., § 16-701 to -708 (LexisNexis 2016).

A-2445-14T3

the conduct reported, . . . as it would if such conduct had occurred in the home [s]tate," and "shall apply the penalties of the home [s]tate or of the [s]tate in which the violation occurred[.]" N.J.S.A. 39:5D-4(a)(2).

While there has been no reported decision dealing with the issue presented here, we are informed by this court's prior decisions regarding the applicability of foreign DWI convictions in different contexts. In Regan, supra, 209 N.J. Super. at 604, we held that the Legislature intended an out-of-state conviction for an offense equivalent to a DWI to be considered as a prior offense for enhanced sentencing purposes on a subsequent DWI conviction. After Regan was decided, the Legislature amended N.J.S.A. 39:4-50(a)(3) to state that DWI convictions in foreign states, regardless of their participation in the DLC, shall constitute a prior conviction. L. 1997, c. 277, § 1. Consistent with the DLC, N.J.S.A. 39:4-50(a)(3) now states in pertinent part:

> A conviction of a violation of a law of a substantially similar nature in another jurisdiction, regardless of whether that jurisdiction is a signatory to the [DLC] . . . shall constitute a prior conviction under this subsection unless the defendant can demonstrate by clear and convincing evidence that the conviction in the other jurisdiction was based exclusively upon a violation of a proscribed blood alcohol concentration of less than 0.08%.

In State v. Cromwell, 194 N.J. Super. 519, 520-22 (App. Div. 1984), we held that the DLC requires New Jersey to "give the same effect to the conduct reported . . . as it would if such conduct had occurred in [New Jersey]" when considering enhanced penalties under N.J.S.A. 39:3-40 due to previous DWI convictions in foreign states.

Similarly in Colley, supra, 397 N.J. Super. at 218-20, we applied the rationale set forth in Regan and Cromwell to conclude the defendant was subject to enhanced penalties under N.J.S.A. 39:3-40 due to a DWI conviction in another state. See also Div. of Motor Vehicles v. Lawrence, 194 N.J. Super. 1, 2-3 (App. Div. 1983) (upholding defendant's license suspension because N.J.S.A. 39:4-50 and New York's DWI statute were of a "substantially similar nature" consistent with the DLC, and were intended to "deter and punish drunk drivers.").

We agree with the Law Division judge that defendant was subject to indictment pursuant to N.J.S.A. 2C:40-26(b) based upon two prior DWI convictions, notwithstanding that one conviction was in Maryland. Pursuant to N.J.S.A. 39:4-50(a)(3) and N.J.S.A. 39:5D-4(a)(2), and consistent with the clear intent

of the Legislature, we hold that defendant's conviction in Maryland qualified as a DWI in New Jersey.[3]

In support of our holding, we note that New Jersey has a "strong public policy against drunk driving." Frye, supra, 217 N.J. at 582. Consistent with that policy, we construe N.J.S.A. 2C:40-26(b) to contemplate convictions for DWI or its equivalent in foreign jurisdictions — even those jurisdictions which are not a party state in the DLC. We also adopt as analogous the rationale enunciated in Regan and Cromwell that enhanced penalties pursuant to N.J.S.A. 39:4-50 or N.J.S.A. 39:3-40 may be triggered by a DWI conviction from another state.

Further, we have considered the policy for the enactment of the DLC, i.e., to promote compliance of motor vehicle laws among the party states, and the legislative intent for the enactment of N.J.S.A. 2C:40-26, i.e., an effort to avoid "fatal or serious accidents . . . caused by recidivist offenders with multiple prior DWI violations, who nevertheless were driving with a suspended license." Carrigan, supra, 428 N.J. Super. at 614. When the above policy and legislative intent are considered with this court's prior decisions in Regan, Cromwell, and Colley, we

---

[3] We note parenthetically there is nothing in the record suggesting defendant attempted to clearly and convincingly demonstrate that his Maryland DWI was based exclusively upon a violation of a proscribed blood alcohol concentration of less than 0.08%. N.J.S.A. 39:4-50(a)(3).

conclude our determination that convictions from other states are included in N.J.S.A. 2C:40-26(b) is wholly consistent with the "spirit of the law[,]" Frye, 217 N.J. at 575, and the logical conclusion of its meaning.

We next address defendant's argument that the denial of his motion to preclude the driver's abstract was erroneous. In reaching our determination we conclude, as did the motion judge, that the abstract was admissible as non-testimonial in nature, and therefore, not in violation of the Confrontation Clause. See Crawford v. Washington, 541 U.S. 36, 69-69, 124 S. Ct. 1354, 1374, 158 L. Ed. 2d 177, 203 (2004). Here, the driver's abstract and attached notice of suspension were not created for the sole purpose of trial or as evidence against a defendant, unlike the laboratory certificates discussed in Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310, 129 S. Ct. 2527, 2532, 174 L. Ed. 2d 314, 321 (2009).

We also conclude that the abstract could properly be admitted as a business record pursuant to N.J.R.E. 803(c)(6) and (8). In State v. Zalta, 217 N.J. Super. 209, 214 (App. Div. 1987), we affirmed a conviction for violation of N.J.S.A. 39:3-40 based upon the admission of a copy of defendant's driving record. See also State v. Pitcher, 379 N.J. Super. 308, 319 (App. Div. 2005), certif. denied, 186 N.J. 242 (2006) (affirming

DWI conviction where arresting officer relied on defendant's driving record as a basis for a motor vehicle stop and stating "[Division of Motor Vehicle] records of drivers' license suspensions are deemed sufficiently reliable to be admissible as prima facie evidence of the fact.") (citing N.J.R.E. 803(c)(8); Zalta, supra, 217 N.J. Super. at 214).

In sum, the judge's denial of defendant's Crawford challenge and the admission of the driver's abstract and notice of suspension were grounded in controlling law, and did not constitute an abuse of discretion. See, e.g., Colley, supra, 397 N.J. Super. at 222 (citing Benevenga v. Digregorio, 325 N.J. Super. 27, 32 (App. Div. 1999), certif. denied, 163 N.J. 79 (2000)).

Predicated upon our decision, the stay of the sentence is vacated.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION