**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2338-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ADEI A. ANDREWS,

     Defendant-Appellant.

_____

Submitted March 16, 2022 – Decided June 22, 2022

Before Judges Geiger and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 18-08-1895.

Joseph E. Krakora, Public Defender, attorney for appellant (Tamar Y. Lerer, Assistant Deputy Public Defender, of counsel and on the briefs).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Rachel M. Lamb, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from her jury trial conviction for operating a motor vehicle while her license was suspended for a prior conviction for driving while intoxicated (DWI), N.J.S.A. 39:4-50. After carefully reviewing the record in light of the arguments of the parties and the governing legal principles, we affirm.

In September 2019, a Camden County grand jury charged defendant by indictment with a single count of fourth-degree operating a motor vehicle during a period of license suspension, N.J.S.A. 2C:40-26(b). Defendant was tried before a jury in September 2019.

We discern the following facts from the trial evidence presented by the State. In the early morning hours of May 4, 2018, Sergeant Kevin Koyyka and Officer Joe Marchese of the Runnemede Police Department were dispatched to a diner in response to a 9-1-1 call from a man who reported that his vehicle had been taken by his girlfriend, defendant, without his consent. The 9-1-1 caller, Georgios Skordos, was not called to testify at trial. Skordos told Sergeant Koyyka that "he got into a verbal argument with [defendant] inside the diner and that she took his car keys[]" and left. Skordos called defendant on her cell phone and "was trying to talk her into bringing his car back." Skordos "advised [the

A-2338-19

officers] she was coming back with the car." The officers waited with Skordos in the parking lot for her return.

Upon her arrival, defendant identified herself by giving the sergeant her New Jersey State ID. Defendant did not provide a drivers' license. Defendant confirmed Skordos' account of their argument and her leaving. Koyyka checked defendant's identification card through the State database and discovered that her license was suspended. He issued her motor vehicle citations for driving with a suspended license and driving without a license.

A subsequent investigation revealed that defendant's license had been suspended based on her prior DWI convictions. The State at trial presented Judgments of Conviction, Orders and Certifications, and Notifications of Penalties for Subsequent DWI or Driving on the Revoked List Convictions for defendant's two prior DWI convictions. Brian Beke, a supervisor at the New Jersey Division of Motor Vehicles (DMV), testified that Judgments of Conviction, Orders and Certifications, and Notifications of Penalties documents are simultaneously generated in Municipal Court when a defendant is found guilty, and that a defendant is given copies of all three documents.

According to the Notice of Penalties, defendant's first DWI conviction resulted in a seven-month period of license suspension, and her second drunk

3

driving conviction resulted in a two-year license suspension. The latter suspension would have remained in effect until December 5, 2019. Accordingly, as of May 4, 2018, approximately nineteen months remained on defendant's license suspension.

Beke testified that defendant's signature appeared on all the appropriate lines except for one. On the Notice of Penalties for the December 5, 2017 conviction, defendant's signature does not appear on the line attesting that "[i]n addition to this written notice, I have informed you of these consequences orally in open court." However, the form bore the municipal court judge's signature, certifying that he had explained the consequences of the conviction to defendant both in writing and orally in open court.

Based on the foregoing evidence, the jury returned a guilty verdict on the fourth-degree crime charged in the indictment. The Law Division judge, sitting as the trier of fact on the non-indictable charge, found defendant guilty of driving without a license.

On November 15, 2019, defendant was sentenced on the fourth-degree conviction to the statutory minimum of 180 days' incarceration, a three-year term of probation, 100 hours of community service, and fees and penalties totaling $155 to be paid in increments of $20 per month. Defendant was also

sentenced on the driving-without-a-license charge to a concurrent ten-day sentence, fines and penalties, and a consecutive six-month period of license suspension.

This appeal follows. Defendant raises the following contentions for our consideration:

> POINT I
>
> THE COURT ERRED IN ADMITTING EVIDENCE OF OTHER CRIMINAL ACTS WITHOUT CONDUCTING AN N.J.R.E. 404(B) OR 403 ANALYSIS OR INSTRUCTING THE JURY NOT TO UTILIZE THE EVIDENCE FOR PROPENSITY PURPOSES (NOT RAISED BELOW).
>
> POINT II
>
> THE TRIAL COURT ERRED IN USING ITS UNSUPPORTED SPECULATION THAT MS. ANDREWS "COULD HAVE KILLED SOMEONE" AND IN USING HER YOUTH AS AN AGGRAVATING CIRCUMSTANCE IN ITS ANALYSIS OF THE AGGRAVATING AND MITIGATING FACTORS AT SENTENCING (NOT RAISED BELOW)[.]

I.

We first address defendant's contention that the trial court erred in allowing the admission of testimony that defendant had taken her boyfriend's

car without his permission following an argument.[1] At trial, defense counsel objected to this testimony on hearsay grounds. The State argued that the testimony was "not . . . offered for the truth of the matter asserted. It[] [was] offered to show what the officer did and what he did next." The trial judge overruled defendant's hearsay objection and allowed the testimony for that purpose.

Defendant now argues for the first time on appeal that the testimony that defendant drove off in the car without permission constitutes "other crimes" evidence that should have been excluded pursuant to N.J.R.E. 404(b). She argues in the alternative that the trial court should at least have issued a curative or limiting jury instruction sua sponte, instructing the jury not to consider the "other crimes" evidence to show that defendant has a propensity to commit crimes.

Rule 404(b) states, "[e]xcept as otherwise provided by N.J.R.E. 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition." N.J.R.E. 404(b)(1). When a party seeks to

---

[1] We note that defendant does not claim that she fled from a domestic violence episode and did not assert a necessity or other justification defense at trial. See N.J.S.A. 2C:3-2.

A-2338-19

admit evidence of other wrong acts committed by a defendant, the trial court must make "a threshold determination . . . as to whether the acts are 'other crimes' subject to a 404(b) analysis, or evidence that is 'intrinsic' to the charged crime and admitted as an exception to 404(b)." Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 7 on N.J.R.E. 404(b) (2022) (citing State v. Rose, 206 N.J. 141, 179 (2011)). "[E]vidence is 'intrinsic' only if it a) directly proves the charged offense, or b) is an uncharged act that was performed contemporaneously with, and helped to facilitate, the charged crime." Ibid. (citing State v. Green, 617 F. 3d 233, 248–49 (3d Cir. 2010)).

Here, no such analysis was conducted, ostensibly because defendant did not object to the testimony on this ground. We agree with the State that in this instance, the act of driving off with the car was "performed contemporaneously with the charged crime" [and] "facilitate[d] the commission of the charged crime." Rose, 206 N.J. at 180. However, even accepting for purposes of argument that the intrinsic evidence exception to N.J.R.E. 404(b) applies, the testimony concerning the taking of the car must still satisfy the general rules of relevance and prejudice. Id. at 177–78.

Under N.J.R.E. 403, "[r]elevant evidence may be excluded if its probative value is outweighed by the risk of: . . . (a) [u]ndue prejudice . . [.]" The risk of

prejudice is "undue" when it "outweigh[s] [the] probative value [of the evidence] so as to divert jurors 'from a reasonable and fair evaluation of the basic issue of guilt or innocence.'" State v. Moore, 122 N.J. 420, 467 (1991) (quoting State v. Sanchez, 224 N.J. Super 231, 249–50 (App. Div. 1988)).

Defendant's failure to object to testimony about the taking of the car, on the grounds that it was unduly prejudicial, is important to our analysis. See State v. Nelson, 173 N.J. 417, 471 (2002) (holding that failure to object to testimony permits an inference that any error in admitting the testimony was not prejudicial). The failure to object to what defendant now characterizes as "other crimes" evidence deprived the trial court an opportunity to balance the probative value of that testimony against the risk of unfair prejudice. It also deprived the court of the opportunity to issue a limiting instruction to the jury.

We note that the testimony presented by the State did not suggest that defendant had "stolen" the vehicle to the extent that under New Jersey law, theft by unlawful taking, N.J.S.A. 2C:20-3, requires a purpose to deprive another of property. The term "deprive" means:

> (1) to withhold or cause to be withheld property of another permanently or for so extended a period as to appropriate a substantial portion of the economic value, or with purpose to restore only upon payment or reward or other compensation; or (2) to dispose or cause

> disposal of the property so as to make it unlikely that the owner will recover it.
>
> [N.J.S.A. 2C:20-1(a).]

In this instance, the jury was told that defendant communicated with Skordos by phone after she drove away from the argument and promptly complied with his request to bring the car back. That circumstance, in our view, mitigates any prejudice associated with testimony that she drove Skordos' car after the argument.

But most importantly, it was defense counsel, not a State's witness, who first brought to the jury's attention that defendant had driven off in Skordos's car without permission. Indeed, counsel was the only person during trial to use the word "stolen" to describe the vehicle that defendant drove while her license was suspended. Defense counsel explained in his opening statement to the jury, "police receive[d] information that the car and keys ha[d] been stolen." The defense, in other words, not the State, introduced the concept that defendant was a person who steals. In these circumstances, defendant is now hard pressed to claim for the first time on appeal that admission of the ensuing testimony was so prejudicial "as to divert jurors 'from a reasonable and fair evaluation of the basic issue of guilt or innocence.'" Moore, 122 N.J. at 467 (quoting Sanchez, 224 N.J. Super. at 249–50).

We add that the State's evidence of guilt was overwhelming. The gravamen of the defense at trial was that defendant did not know her license had been suspended because she had not signed an acknowledgement form when she was last convicted of drunk driving. The uncontroverted trial record clearly shows, however, that the municipal court judge announced the license suspension in open court and physically took her license. See N.J.S.A. 39:4-50(c) ("[F]ailure to acknowledge in writing the receipt of a written notice shall not be a defense to a subsequent charge of a violation of [operating a motor vehicle during a period of license suspension,] N.J.S.A. 39:3-40.").

In these circumstances, even assuming for the purposes of argument that the hearsay testimony concerning how and why defendant drove off in Skordos' vehicle should not have been admitted, any such error was not "clearly capable of producing an unjust result." R. 2:10-2. The mere possibility of an unjust result is not enough. See State v. Funderburg, 225 N.J. 66, 79 (2016) (citing State v. Jordan, 147 N.J. 409, 422 (1997)). "Rather, '[t]he possibility must be . . . sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Alexander, 233 N.J. 132, 142 (2018) (quoting State v. Macon, 57 N.J. 325, 336 (1971)). Applying that standard, we affirm the jury verdict.

10

II.

We next address defendant's contention that the court erred in assessing the aggravating and mitigating factors at sentencing. Specifically, defendant challenges two comments made by the judge at the sentencing hearing: (1) that defendant's conduct "threatened serious, serious harm" because it "could have killed somebody," and (2) that because defendant was "relatively young to have such a substantial municipal record[,]" she posed a greater risk of recidivating. Defendant contends both comments "were pure speculation without support" and "infect[ed] the sentencing process." We disagree.

Appellate courts review sentencing determinations deferentially, and do not substitute their judgment for that of the sentencing court. State v. Fuentes, 217 N.J. 57, 70 (2014). A sentence will be affirmed unless:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364–65 (1984)).]

In imposing a sentence, the court must make an individualized assessment of the defendant based on the facts of the case and the aggravating and mitigating

11

sentencing factors. State v. Jaffe, 220 N.J. 114, 121–22 (2014). To facilitate appellate review, the sentencing court must "state reasons for imposing such sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting [the] sentence . . . ." R. 3:21-4(h); accord Fuentes, 217 N.J. at 73; see also N.J.S.A. 2C:43-2(e) (requiring the sentencing court to state the "factual basis supporting its findings of particular aggravating or mitigating factors affecting sentence."). Generally, an appellate court should defer to the sentencing court's factual findings and should not "second-guess" them. State v. Case, 220 N.J. 49, 65 (2014). However, deferential review of a sentence "presupposes and depends upon the proper application of sentencing considerations." State v. Melvin, 248 N.J. 321, 341 (2021) (quoting Case, 220 N.J. at 65); accord State v. Trinidad, 241 N.J. 425, 453 (2020).

The record shows that the trial judge carefully reviewed the applicable statutory factors. The court found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that . . . defendant will commit another offense"); six, N.J.S.A. 2C:44-1(a)(6) ("[t]he extent of the defendant's prior record and the seriousness of the offenses of which the defendant has been convicted"); and

nine, N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring the defendant and others from violating the law").

While discussing aggravating factor three, the judge reasoned that although this was defendant's first indictable offense "the defendant has four juvenile adjudications" which "include aggravated assaults and two shoplifting [adjudications]." Defendant's record also contains "six municipal court convictions[,] . . . includ[ing] assault, and improper behavior, and disorderly conduct, and disturbing the peace, and shoplifting as well as controlled dangerous substance [convictions]." The judge then remarked that at twenty-five years old, defendant "is relatively young to have such a substantial municipal record." Based on defendant's criminal history in the eight years since she had turned eighteen, including two DWI convictions, the judge found there was a risk that defendant would commit another offense.

The judge also considered the applicable mitigating factors, finding mitigating factor six, N.J.S.A. 2C:44-1(b)(6) ("[t]he defendant has compensated or will compensate the victim of the defendant's conduct for the damage or injury that the victim sustained, or will participate in a program of community service"), and ten, N.J.S.A. 2C:44-1(b)(10) ("defendant is particularly likely to respond affirmatively to probationary treatment"). With respect to mitigating

13

factor six, the court reasoned that although defendant had not "compensated the victim" because "[t]here is no victim in this case," the court nonetheless applied the mitigating factor based on character witness statements and defendant's past community service with a charitable organization. The court applied mitigating factor ten because of "all of the[] people [who] have put forth letters and . . . are supportive of [defendant] and . . . want her to succeed."

The judge declined to find mitigating factor one, N.J.S.A. 2C:44-1(b)(1) ("[t]he defendant's conduct neither caused nor threatened serious harm"). While evaluating that mitigating factor, the judge commented that defendant's conduct "threatened serious, serious harm." The judge explained that "[t]his kind of conduct is very serious. And [defendant is] looking at jail time[,] [a]nd . . . could have killed somebody." The judge concluded that mitigating factor one did not apply because "[defendant's] conduct threatened serious harm[]" and "show[ed] that she wasn't thinking clearly . . . [or] making appropriate choices."

The judge next conducted a qualitative analysis and found that the aggravating factors outweighed the mitigating factors. Defendant was thereupon sentenced to the statutory minimum of 180 days in county jail. Defendant contends it was inappropriate for the court to impose a three-year

term of probation, arguing that a shorter period of probation should have been imposed.

We reject defendant's contention that it was inappropriate speculation for the court to comment that defendant "could have killed somebody" by driving under the influence. We recognize that there was no proof that defendant was under the influence when she drove off in her boyfriend's car. We see nothing inappropriate, however, in the sentencing court's recognition that the statutorily-mandated suspension of a convicted drunk driver's license is designed to save lives, and that defendant's failure to abide by the license suspension after a drunk driving conviction posed a risk to public safety. The Legislature outlawed driving while under the influence precisely because of the serious danger such conduct poses to the public. See State v. Rodriguez, 238 N.J. 105, 108 (2019). We add that the crime for which defendant was convicted is designed to deter "recidivist offenders with multiple prior DWI violations, who nevertheless were driving with a suspended license." See State v. Carrigan, 428 N.J. Super. 609, 624 (App. Div. 2012) (recognizing N.J.S.A. 2C:40-26 as a "recidivist statute").

We also reject defendant's argument that it was improper for the sentencing judge to mention defendant's age in relation to her criminal history when evaluating the likelihood that she would commit future crimes. We stress

15

that this is not a situation where the judge considered defendant's youth as an aggravating factor in contravention of the rule recently announced by the Supreme Court in State v. Rivera, 249 N.J. 285 (2021). In Rivera, the Court held that a defendant's youth may be considered only as a mitigating factor and cannot support an aggravating factor. Id. at 303. In that case, the sentencing court speculated that defendant would have engaged in other criminal conduct but did not have the opportunity to do so because of her youth. Id. at 302. Here, in contrast, the sentencing court commented on the number of offenses defendant actually committed in a short time span.

In sum, the trial court did not abuse its discretion in applying and weighing the applicable aggravating and mitigating factors. Nor does the sentence shock the judicial conscience. See Roth, 95 N.J. at 364–65.

To the extent that we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16